Hon. Marvin I. Honig County Attorney, Rensselaer County
This is in reply to your letter requesting the opinion of this office with respect to the Rensselaer County Department for Aging. You state that this Department receives federal funds through New York State for the purpose of providing services, including legal counseling services, to senior citizens within Rensselaer County. At the present time, the legal services provided are in the nature of general legal education, and when a senior citizen has an individual problem he is directed to a referral service of the Bar Association or the Legal Aid Society. Now, however, you inquire whether the legal services can be expanded to include such areas as court representation of low income senior citizens in landlord-tenant disputes; preparation of simple wills; representation before a Social Security Agency, and similar areas.
Section 95-a of the General Municipal Law authorizes counties to establish and operate programs for the aging and to receive and expend federal funds for such purposes. Additional statutory authority for the establishment of a county department for senior citizens is contained in Article 19-J of the Executive Law, which creates the New York State Office for the Aging. Section 536-a under Article 19-J provides, in part, as follows:
"§ 536-a. Programs for the aging.
* * *
 "2. * * * the office for the aging is hereby authorized, to the extent appropriations are available therefor, to establish, operate and maintain, or to contract with counties, * * * or public or private non-profit corporations, associations, institutions or agencies concerned with the aging, for the operation and maintenance of programs for the aging. Pursuant to the rules and regulations of the office for the aging, such programs may include, but need not be limited to, the following:
* * *
"(c) counselling services; * * *"
Pursuant to the above-cited statutes, therefore, counties are authorized to provide counseling services to senior citizens. These statutes make no specific mention of counseling senior citizens on legal matters, nor do they indicate to what extent legal counseling services are authorized. However, section 99-h of the General Municipal Law was specifically enacted to afford statutory authority for municipalities to operate local programs which are federally funded but which are not specifically authorized by state law (see New York State Legislative Annual, 1970, p. 218). Subdivision 2 of section 99-h provides, in part:
"§ 99-h. Participation in federal programs
* * *
 "2. Any municipal corporation shall have power, either individually or jointly with one or more other municipal corporations, to apply for, accept and expend funds made available by the federal government either directly or through the state, pursuant to the provisions of any federal law, which is not inconsistent with the statutes or constitution of this state, in order to administer, conduct or participate with the federal government in programs relating to the general welfare of the inhabitants of such municipal corporation. Any such municipal corporation
is authorized to appropriate and expend such sums as are required to administer, conduct or participate in any such programs and may perform any and all acts necessary to effectuate the purposes of any such programs." (Emphasis supplied.)
Accordingly, a county, as a municipal corporation, is authorized to perform those acts necessary to carry out the purposes of a federally funded program relating to the general welfare of the counties' inhabitants, as long as the program does not conflict with the Constitution or statutory law of New York.
The program which Rensselaer County operates for the benefit of the senior citizens of the community is ninety percent federally funded under the amended provisions of the Older Americans Act (42 USCA, §§ 3001 etseq.). The funds are channeled through the New York State Office for the Aging, which is the agency responsible for submitting a state plan to the federal Commissioner of the Administration on Aging for approval. The federal law, in 42 USCA, § 3025, set forth four priority services to be provided for the elderly. Subdivision b thereof provides, in part, as follows:
 "(b) Every State plan shall provide for the establishment or maintenance of programs (including related training) for the provision of some or all of the following services designed to assist older persons in leading independent lives and avoiding unnecessary institutionalization:
* * *
 "(3) Legal and other counseling services and assistance programs, including tax counseling and assistance and financial counseling, for older persons."
The legislative history of this statute is set forth in Senate Report No. 94-255, which accompanied the bill which enacted the 1975 amendments to the Older Americans Act (P.L. 94-135). That report is contained in US Code Congressional and Administrative News, 94th Congress, First Session, 1975 (pp 1252-1326).
That portion of the report dealing with legal services (pp 1265-1267) is annexed hereto. You will note that it details the numerous federal statutes and regulations which have a direct bearing on many facets of the lives of senior citizens. The report then suggests that effective legal counsel is needed to enable senior citizens to take full advantage of these statutes and regulations applicable to them, but that, in many areas, such counsel is either unavailable or inadequate. Thus a program offering the services of attorneys trained in these areas of the law in order to advise individual senior citizens, appears to be sanctioned by the framers of the federal legislation. This is evident by the references made in the report to private attorneys who, it is suggested, may be unavailable or too costly for most senior citizens, or simply not sufficiently versed in the subject to be effective. In addition, the conferees from the House and Senate who drafted the final version of the bill enacting the federal legislation noted "* * * their intent that tax counseling include assistance in the actual preparation of income tax forms." (US Code Congressional and Administrative News, 94th Congress, First Session, 1975 [p 1304].
When legal services are offered on an individual basis to senior citizens in response to their personal legal needs, we see no material difference between out-of-court advice and courtroom representation, when that is required. Both involve the practice of law, and there appears to be no substantive distinction between the two, insofar as representing a client is concerned.
Although most of the counties within New York have implemented the legal services portion of the federal law by contracting with local legal aid societies or legal services corporations for the provision of legal services for the elderly, the federal act does not appear to preclude a state plan from establishing programs which offer such services directly to the elderly when circumstances so require. This is evidenced by an excerpt from the Senate Report referred to above, at page 1257, stating that:
 "* * * The area agencies [counties] are not intended to move in as competitors to established providers and they are authorized to provide services directly only when such services cannot be otherwise supplied. Ultimately, this policy should result in more abundant services and an improved delivery system.
 "Notwithstanding these considerations, there is an urgent need for services — particularly in such critical areas as transportation, home care and legal assistance — that is going unmet virtually everywhere in the nation. The bill passed by the House addresses this situation * * *" (Emphasis supplied.)
Therefore, if the state plan drawn up by New York's Office for the Aging would allow for such a program, since the state plan is approved by the federal agency, section 95-a of the General Municipal Law authorizes the county to implement it, provided that it would not be inconsistent with other New York constitutional or statutory law.
The program should be in compliance with the Office for the Aging's state plan, since that office, pursuant to section 536-a of the Executive Law, is responsible for supervising the administration of that plan and for promulgating rules and regulations with respect to the services offered by a county department for the aging.
We are not aware of any statutory provision prohibiting a county from offering certain direct legal services to individual senior citizens. However, two constitutional provisions come to mind with respect to such a program. Article I, section 11 of the New York State Constitution states that no person shall be denied the equal protection of the laws of the state or any subdivision thereof. One might argue that offering legal assistance to senior citizens unconstitutionally discriminates in favor of senior citizens. However, the Court of Appeals has stated that protective legislation favoring the elderly, based wholly on the age or economic need of the recipient, is a reasonable classification with a substantial relation to a legitimate public purpose and is not, therefore, violative of the Equal Protection Clause (Parrino v Lindsay,29 N.Y.2d 30 [1971]).
In order to insure equal protection within the class, however, it would be necessary to insure that the legal services to be offered would be available to all qualified members of the class, although limiting some of the services on the basis of income level would appear to be proper. (See Opns St Comp 74-754.)
To insure that the local program further complies with the Equal Protection Clause and the intent of the federal statute, the legal services should be in response to those problems which particularly affect the elderly as a group, such as those mentioned in the Senate Report. We do not here attempt to enumerate those services which would be appropriate, but the Office for the Aging could assist in making this determination, since their state plan has to be reviewed and approved by the federal Administration on Aging. As a practical matter, the variety of legal services offered would no doubt by limited by the funds available for the program.
A second constitutional provision relevant to this discussion is Article VIII, section 1 of the New York State Constitution, which prohibits counties from giving or loaning money or property in aid of any private individual. In this instance, however, legal services would not be provided to selected citizens as private individuals, but to members of a distinct class pursuant to a municipal program, where all members of the class have the right to receive the same benefits. This would not constitute a gift in violation of the Constitution (see Opns St Comp 72-1022), particularly in view of the fact that ninety percent of the money used to fund the program comes from the federal government.
We conclude that a county department for the aging is authorized to provide direct legal services to the elderly, including court representation, in furtherance of the legal services provisions of the federal Older Americans Act of 1965, as amended, provided that such program is consistent with the state plan devised by the Office for the Aging. We suggest, therefore, that you consult with that office to insure that your proposed program conforms to the state plan, since the Office for the Aging is charged with the duty of assisting the municipalities of the state in developing local programs for the aging (Executive Law, § 536). Since the state plan must be submitted to, and approved by, the federal Administration on Aging, conformity with the state plan would insure that the county is operating within the parameters established by the federal government. The agencies participating in this program will undoubtedly restrict this program for enlarged legal services to the elderly to those who demonstrate the need for such services stressed in the congressional report.